SLOSS-SHEFFIELD STEEL & IRON CO. v. DRANE.

(Circuit Court of Appeals, Fifth Circuit. March 31, 1908. · On Rehearing, April 20, 1908.)

No. 1,516.

DEATH—CHILDREN—ACTION BY PARENTS—MEASURE OF DAMAGES.

Code Ala. 1896, § 25, provides that a father, or, in certain cases, the mother, may sue for an injury to a minor child, a member of the family. Section 26 declares that, when the death of a minor is caused by the wrongful act of another, the father or mother or personal representative of the minor may sue and recover "such damages as the jury may assess," and section 27 provides that a personal representative may maintain an action and recover such damages as the jury may assess for the wrongful act of another, whereby the death of his testator or intestate was caused, the proceeds of which are distributable under the statute of distributions, without liability for debts. Held, that in an action by a father for the wrongful death of his minor son, he was not limited to the recovery of compensatory damages only, but was entitled to recover such damages as the jury might assess under all the facts and circumstances in the case, uninfluenced by passion, sympathy, or feeling.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 123.]

Newman, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

R. W. Walker and Jno. P. Tillman, for plaintiff in error.
Travis Williams, for defendant in error.

Before McCORMICK, Circuit Judge, and NEWMAN and BURNS, District Judges.

McCORMICK, Circuit Judge.   This was a suit by Polk Drane, the defendant in error, to recover damages for the death of his minor son, Carleton Drane, who was alleged to have been employed by the defendant without the plaintiff's knowledge or consent.   Each count of the complaint alleges that the minor was employed without the knowledge and consent of the father, and put to work in a dangerous place. There was a judgment in favor of the plaintiff.   The plaintiff in error assigns as errors the action of the trial court in overruling demurrers to the complaint, in sustaining demurrers to pleas interposed by the defendant, in declining to give the affirmative charge requested by the defendant, and in giving certain instructions to the jury, to which exceptions were reserved by the defendant.

The demurrers to the complaint were properly overruled.   If the trial court erred in his action on the demurrers to any of the pleas (which we do not affirm), we are satisfied from our view of the whole case that it was an error without injury, as the pleas stricken were not supported by any proof, and the record affirmatively shows that all of the evidence that could have been offered or did exist was admitted under the general issue.   On the issue as to whether the minor was a member of the plaintiff's family up to the time the injuries were received, the jury were properly instructed, and the proof on this issue was sufficient to sustain their verdict.   The trial court did not err in declining to give the affirmative charge requested by the defendant. Whether it erred in giving certain instructions to the jury touching the measure of damages, to which exceptions were reserved by the defendant, is a question which has received studious consideration, and calls for ampler treatment.

The statutes of Alabama provide:

"A father, or (in certain cases) the mother, may sue for an injury to a minor child, a member of the family."   Section 25, Code 1896.   "When the death of a minor child is caused by the wrongful act, or omission, or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in the cases mentioned in the preceding section, or the personal representative of such minor, may sue and recover such damages as the jury may assess; but a suit by the father or mother in such case is a bar to a suit by the personal representative."   Section 26.   "A personal representative may maintain an action, and recover such damages as the jury may assess for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death; * * * and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distribution."   Section 27, Code 1896

The Legislature of Alabama passed an act "to prevent homicides," approved February 21, 1860, which provided:

"That, when the death of a person is unlawfully caused by another, the personal representative of the deceased may maintain an action against the latter at any time within two years thereafter, and may recover such sum as the jury deem just, and the amount so recovered shall be distributed as the personal property of an intestate is now distributed, and shall not be subject to the payment of the debts of the deceased." Laws 1859–60, p. 42.

The author of the Revised Code, made some years after the passage of this act, overlooked it, and omitted to embrace it in his revision, and retained several sections of the previous law which the omitted statute has repealed. To remedy this oversight, and to restore the statute, "the Legislature, at the session of 1871–2, re-enacted the statute 'to prevent homicides,' with the same title, and, in all material respects, in language identical with that employed in the act of February 21, 1860." Laws 1871–72, p. 83; Railroad v. Shearer, 58 Ala. 678. Immediately after the re-enactment on February 5, 1872, of the act "To prevent homicides," the Legislature provided by statute that, "When the death of any minor child is caused by the wrongful act or omission of any officer or agent of an incorporated company, or private association of persons, the father of such child, or if the father be not living, the mother, may maintain an action against such corporation or private association of persons, for such wrongful act or omission, and may recover such damages as the jury may assess." This act, for reasons given in the opinion of the court, was held to be unconstitutional in the case of Smith v. Railroad, 75 Ala. 449. Soon thereafter the Legislature passed the act, the provisions of which are now embraced in section 26, above set out. The act "To prevent homicides" applied as well to infants as adults, but it did not, as construed by the courts, create any right of action in the father or mother, and, as soon as this became· sufficiently known, the law now in force was passed (Acts 1884–5, p. 99), the sole purpose and effect of which was to extend the right of action already lodged in the personal representative to the father, and, in certain contingencies, to the mother. And while there is no express limitation in this statute to cases in which recovery might have been had by the party injured, had not death ensued, the decisions in Alabama measure the father's recovery under this section of the Code by a consideration of what the child's right would have been had he survived, at least to the extent of confining the former to cases in which the latter might have recovered, though not extending it to all such cases. The only effect which section 26 of the Code had is to give the father, and, in the contingencies named in section 25, the mother, or the personal representative, of a minor whose death has been caused by wrong and negligence, the right to recover damages, and to confine the personal representative's right to cases where neither the father nor mother has instituted suit. The parent cannot sue at all on a cause of action arising under the employer's liability act. Sections 1749–51, Code 1896; McNamara v. Logan, 100 Ala. 187, 14 South. 175.

The group of statutory enactments in Alabama, to which we have referred, are all, to some degree, in derogation of the common law. The habit of thought in the professional legal mind, both on the bench and at the bar, receives its trend from the classic, and almost sacred, rules and canons of the common law. The opening words of the trial judge's charge to the jury, "At common law in England and in this country no action can lay at all for the death of a human being," constitute a "proof-text" or a known or admitted major premise in most judicial and professional reasoning on this subject, and the reason which he gives also stamps its complexion on such discussions. He says, "The idea was that the injury was merged in the felony." Touching the terms of one of these statutes, we find in an early case (1883) this language:

"The statute is highly penal in its terms, and must be construed as a penal statute." 75 Ala. 449.

In a later case (1898), this language occurs:

"But while the damages recoverable are undoubtedly, under our former rulings, punitive in their nature, and not compensatory, they are not, in a strict sense, a penalty, nor is the action penal, or quasi-criminal, within the meaning of the constitutional provisions as above construed. The statute is remedial, and not penal, and was designed as well to give a right of action where none existed before, as to 'prevent homicides,' and the action given is purely civil in its nature for the redress of private, and not public wrongs." So. Ry. Co. v. Bush, 122 Ala. 489, 26 South. 168.

The cases arising in Alabama on or under these statutes are numerous. We note in the margin those which we have examined and considered.[1]

The very able and distinguished counsel for the plaintiff in error urges in his printed brief, as he did in his oral argument, that the ruling of the trial court on the question we are now considering is directly opposed to the decision in the case of Williams v. S. & N. A. R. R. Co., 91 Ala. 635, 9 South. 77. He insisted with confidence before us in his oral argument, as he also does in his brief, that "In that case the court expressly limited the recoverable damages to compensation to the father for the loss of the minor's services." And the counsel for the defendant in error in his brief concedes that the

[1] Nashville C. & St. L. Ry. Co. v. Hill, 146 Ala. 240, 40 South. 612; Bube v. Br. L. & P. Co., 140 Ala. 276, 37 South. 285, 103 Am. St. Rep. 33; So. Ry. Co. v. Bush, 122 Ala. 489, 26 South. 168; L. & N. R. R. Co. v. Orr, 121 Ala. 489, 26 South. 35; Ala. G. S. R. R. Co. v. Burgess, 116 Ala. 509, 22 South. 913; Buckalew, Adm'r, v. Tenn. C. I. & R. R. Co., 112 Ala. 146, 28 South. 606; L. & N. R. R. Co. v. Markee, 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21; Ala. G. S. R. R. Co. v. Dobbs, 101 Ala. 219, 12 South. 770; Tenn. C. I. & R. R. Co. v. Herndon, Adm'r, 100 Ala. 451, 14 South. 287; McNamara et al. v. Logan, 100 Ala. 187, 14 South. 175; Kansas City, M. & B. R. R. Co. v. Sanders, 98 Ala. 293, 13 South. 57; Richmond & D. R. R. Co. v. Freeman, 97 Ala. 289, 11 South. 800; Williams v. S. & N. A. R. R. Co., 91 Ala. 635, 9 South. 77; L. & N. R. R. Co. v. Orr, 91 Ala. 548, 8 South. 360; Lovell v. De Bardelaben C. & I. Co., 90 Ala. 13, 7 South. 756; Stewart v. L. & N. R. R. Co., 83 Ala. 493, 4 South. 373; Smith v. L. & N. R. R. Co., 75 Ala. 449; S. & N. A. R. R. Co. v. Sullivan, Adm'r, 59 Ala. 272; Savannah & M. R. R. Co. v. Shearer, Adm'x, 58 Ala. 672.

case of Williams seems to assert a different doctrine from that for which the defendant in error here contends. With much diffidence we feel constrained to announce our belief that the authority of the case of Williams does not go to the extent claimed. And to show and support our view, we will summarize more largely than is usual with us the report of that case. We begin with the syllabus, which, in substance and almost literally, is as follows:

"1. Under the statute defining the liability of the master (or employer) for injuries to the servant (or employé) while in the service, the right of action for injuries which result in death is given only to the personal representative of the decedent, but a right of action is given to the father by another statute, when the death of his minor child is caused by the wrongful act, omission, or negligence of any person or corporation.

"2. Contributory negligence on the part of the person injured, while employed as a brakeman on a railroad, is a defense to an action for damages, unless the evidence further shows that, after his peril was discovered, or ought to have been discovered, the injury might have been avoided by the exercise of due care and diligence on the part of the engineer.

"3. When the father sues to recover damages for the death of his minor son, who was killed while in the employment of the defendant railroad company as a brakeman, without his consent, the contributory negligence of the minor is no defense to the action, though it might be available as a defense to an action by the minor himself, if death had not ensued from the injuries; but, if the father consented, expressly or by implication, to the employment of the minor in the service, the contributory negligence of the minor is imputed to the father, and defeats his right of action.

"4. The use of 'kicking-switches,' or 'running-switches,' in detaching and propelling cars, cannot be said to constitute negligence, as 'they seem to be in general use by well-regulated railroads,' but there may be negligence in connection with their use, by failing to instruct a young and inexperienced brakeman as to the attendant danger.

"5. The damages recoverable by the father, in a statutory action for injuries resulting in the death of his minor son, are compensatory only, and not punitive."

The following language, quoted by counsel, appears in the opinion:

"At common law the father could sue for and recover damages for an injury not resulting in death wrongfully done to his minor son. The damages were to compensate him for the loss of services. If death resulted, the action was not maintainable. The statute (Alabama) confers the right of action on the father, although death may have resulted. * * * We hold that, under section 2588 of the Code (1886), the father may recover in all cases where at common law he might have recovered if the injury had not resulted in death, and the purpose of this statute was to give the father the right of action, although death resulted from the injury."

The following also appears:

"The second, third, fourth, and fifth counts of the complaint do not negative that the employment was with the father's consent; and these counts are evidently founded upon the supposed liability of the defendant under the employer's act. Sections 2590, 2591, Code of 1886; sections 1749–1751, Code of 1896. The father cannot maintain an action to recover under the employer's act (citing authority). As he cannot recover on these counts, under any state of evidence, there was no error in giving the general charge in favor of the defendant, of which plaintiff can complain, so far as it denied his recovery on these counts. * * * The correctness of this charge involves the inquiry whether any count of the complaint, if sustained by proof, entitled plaintiff to recover; and if so, was there any evidence before the jury, which tended to sustain such count of the complaint."

"Code, § 2588 (1886) (26, 1896) provides as follows: 'When the death of a minor child is caused by the wrongful act, or omission, or negligence of any person, or persons, or corporation, his or their servants, or agents, the father may sue, and recover such damages as the jury may assess.'"

Then follows more than two full pages, constituting the body of the opinion, of a discussion bearing upon the question of parties and the application of the doctrine of contributory negligence, concluding with this paragraph:

"The first and last counts of the complaint aver that the decedent was a minor son of the plaintiff; that he was wrongfully employed by the defendant to perform the duties of a brakeman, without the knowledge and consent of plaintiff, and that while attempting to obey the orders of his superior in the performance of his duties as brakeman, he was injured and killed by the wrong and negligence of the defendant's agents or servants. These two counts show a good cause of action, and there was evidence tending to sustain the averments of these two counts. It was error to give the general charge for the defendant."

The only language of the court bearing expressly on the measure of damages is contained in the last three lines of the opinion, as a separate paragraph, viz.:

"The damages recoverable by the father are compensatory, and not punitive. L. & N. R. R. Co. v. Orr, 91 Ala. 548, 8 South. 363, and authorities cited."

We will now notice the Orr Case. This was an action brought by Horace Orr, administrator of the estate of Henry Griffin, deceased, to recover damages for the wrongful and negligent acts of the defendant and its servants, which, as alleged, caused the death of Griffin while in the defendant's service as a brakeman. We quote from the opinion in that case:

"In this state, the statute provides that, in certain cases, the master or employer 'is liable to answer in damages' to the servant or employé. Code. § 2591 (1886). The record presents the direct question, as to what is the measure of damages under the statute, where death results."

After a liberal discussion of the English common-law rules and the evolution of the new doctrines and reference to authorities, the opinion proceeds:

"These principles furnish a correct exposition of our statute; and consequently we declare, under the provision of section 2591 of the Code, neither exemplary nor vindictive damages are recoverable. The purpose of this statute is entirely different from that intended by the act of February 5, 1872 (Laws 1871–72, p. 83), the object of which was to 'prevent homicide.'"

The deceased, at the time he was killed, was 35 years of age. The suit was brought under the employer's act. And, in the decision and opinion of the court, no reference to the damage which a parent might recover for the death of a minor child, a member of the family, was made or would have been pertinent.

The distinguished counsel for the plaintiff in error calls our attention to language taken from the opinion of the court in the case of Nashville, etc., Ry. Co. v. Hill, 146 Ala. 240, 40 South. 612, viz.:

"The gravamen of the eighth count is 'the alleged wrong of the defendant in putting the plaintiff's minor son to work at a dangerous place upon a dan-

gerous work without her consent.' The count avers that in consequence of such wrong her son was killed, and the plaintiff (thereby) lost his service during his minority, and plaintiff was damaged by reason of said injury. This damage was the deprivation of his service and wages until he attained his majority."

The complaint originally contained seven counts, and count 8 was added by amendment. The suit was brought within a year from the happening of the accident, but count 8 was not filed until more than a year thereafter. The defendant pleaded the statutes of limitations of one year, upon which issue was joined. We quote from the opinion:

"The comparison of count 1 with count 8 shows that the subject-matter of the latter was within the lis pendens of the original suit, and hence said count introduced by amendment is saved from the ban of the statute of limitations by the doctrine of relation back to the commencement of the suit."

The language, "this damage was a deprivation of his service and wages until he attained his majority," has relation logically to the averment in the count "that, in consequence of such wrong, her son was killed, and the plaintiff (thereby) lost his service during his minority, and plaintiff was damaged by reason of said injury." She could not recover more than she claimed.

The only questions before the court in the Hill Case, were, first, whether the cause was removable to the federal court; second, the question of limitations; and, third, whether the amendment changed the form of action. The counsel in his printed brief says:

"This court itself has expressly decided in the case of McGehee v. McCarley, 91 Fed. 462, 33 C. C. A. 629, that in a suit under section 26 of the Alabama Code the damages recoverable are compensatory, and not punitive, following the decision in Williams v. Railroad Co., supra. The result in the McCarley Case was changed on rehearing (McGehee v. McCarley, 103 Fed. 55, 44 C. C. A. 252), but that change was not due to any change in the opinion of the court as to the construction of section 26 of the Code, but to the discovery by the court that the suit was brought, not under section 26, but under section 27 of the Code."

We reply to this suggestion of counsel by quoting in full all that this court said on the subject in the case of McGehee v. McCarley:

On first hearing:

"We find nothing in the statute law of Alabama which would require a departure from the doctrine announced in Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. On the contrary, we find that the Supreme Court of Alabama, in construing the very statute under which this action was brought (Code Ala. 1886, § 2588), said that the damages recoverable under that statute are compensatory, and not punitive. Williams v. Railroad Co., 91 Ala. 635, 9 South. 77." McGehee v. McCarley, 91 Fed. 465, 33 C. C. A. 629.

On rehearing:

"This cause was fully stated when it was first passed upon by this court. See 91 Fed. 462, 33 C. C. A. 629. An application for rehearing having been made by the defendant in error, and, the same having been granted, the cause has been fully reargued, and the court has again carefully considered it. The single error heretofore found by this court in the cause was that the trial court refused to charge the jury that only compensatory, and not punitive, damages were recoverable in the cause. On the first hearing of this cause the argument and the briefs treated very imperfectly, and in an unintentionally misleading manner, the matter of the statute law upon which this cause was

based. Assisted by the argument and briefs on the rehearing, the court has carefully re-examined the point upon which it ordered this cause to be remanded, and has concluded that the statute law of Alabama permits a personal representative to recover punitive damages in such a cause as the one at bar, and that therefore it is not within the doctrine of Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. The court has also re-examined the other questions involved in this cause, and finds no error in the cause. It is therefore ordered that the former order of this court, reversing the judgment of the lower court and remanding this cause for a new trial, be, and the same is hereby, annulled and set aside. It is further ordered that the judgment of the lower court be, and the same is hereby, affirmed." 103 Fed. 55, 44 C. C. A. 252.

Does our decision sustain the contention of the plaintiff in error? Does it not, to the contrary, support the contention of the defendant in error? We think that it at least does show the danger of mistaking some inadvertent language in an opinion for the authority of the case.

It would unduly extend this opinion to notice ever so briefly all of the numerous cases in the Alabama Reports which relate to the adoption, development, and application, in that state, of the doctrines of Lord Campbell's Act; but one who will examine the cases cited in the margin will be able to discover sufficient grounds to conclude, as we do, that the trial judge did not err in that part of his charge to the jury, wherein he said to them:

"The section of the Code, under which the plaintiff has brought this suit, says that the plaintiff shall recover 'such damages as the jury may assess,' and in that sense, by the letter of the statute under which this suit is framed, the assessment of damages is left to the jury, but it is left to the jury under the control of the law, and under the control of the court, and an excessive verdict produced by appeals to passion, or to prejudice, or to sympathy would of necessity have to be set aside or reduced by the court. I do not say to you in this case that the amount of damages should be limited to the amount of wages or earnings that this lad might have made from the time of the accident to the time he reached his majority. I do not say to you that there is such a limit. The plaintiff can recover 'such damages as the jury may assess,' and you should have regard to all the facts and circumstances of the case which have been so well discussed by counsel, not being influenced by any appeal to passion, sympathy, or feeling. We sit here to decide the case, all of us, according to the proper rules of justice between the parties."

It follows that the judgment of the Circuit Court should be affirmed. And it is so ordered.

NEWMAN, District Judge (dissenting). I am unable to agree with the majority of the court in the conclusion reached in this case. In my judgment, the statutes of Alabama as construed by the Supreme Court of that state, allow only compensatory damages in cases of this character; that is, the loss to the parent of the minor's services during minority. Under the law of Alabama, as I understand it, when a minor child is employed without the knowledge or consent of the parent in a dangerous service, and is injured in such service, and dies from the injuries, the father, and the mother in certain contingencies, may sue and recover against the employer; the measure of damages being the value of the child's services during minority; that is, the parent's pecuniary loss. In such cases the contributory negligence of the deceased is not a defense. In another class of cases, when a minor child is killed in the service of another, the right of action which he

would have had if he had been injured and had not died in case of death survives to the personal representative or to the father, or, under certain circumstances, to the mother, and in these cases the defense of contributory negligence may be interposed.

The plaintiff, the father in this case, elected the former cause of action. The pleas of contributory negligence filed by the defendant company were stricken because it was this character of action, and the case was tried on that theory, as the whole record, including the instructions by the court to the jury, shows. There was no evidence in the case as to the value of the services of the deceased. His age was proven, which of course would give the length of time that would elapse until he attained his majority, but this was all. The court instructed the jury that the plaintiff, the father, was entitled to recover such damages "as the jury might assess." The court was careful to tell the jury while stating that the suit provided for such damages as they might assess, that the amount they should find ought to be found as their "calm and deliberate judgment," and under the control of the law, and that they should not be moved to find an undue amount by prejudice or sympathy. All this, however, simply left the jury to find such amount as in their judgment might be fair and reasonable for the killing of the father's minor child. I think the jury should have been restricted to the value of the child's service to the parent during minority. As to what this would have been, as has been stated, there was no evidence.

In my judgment this question is settled by the construction placed by the Supreme Court of Alabama on the Alabama statutes. The most important case on that subject is the case of Williams v. Railroad Co., 91 Ala. 635, 9 South. 77. A brief extract from the conclusion of the opinion in that case will show what was determined as to the question here involved:

"The first and last counts of the complaint aver that decedent was a minor son of plaintiff; that he was wrongfully employed by the defendant to perform the duties of a brakeman without the knowledge and consent of the plaintiff, and while attempting to obey the orders of his superior, in the performance of his duties as brakeman, was injured and killed by the wrong and negligence of the defendant's agents and servants. These two counts show a good cause of action, and there was evidence tending to sustain the averments of these two counts. It was error to give the general charge for the defendant. The damages recoverable by the father are compensatory and not punitive." Citing Railroad Co. v. Orr, 91 Ala. 548, 8 South. 363, and cases there cited.

The rule announced in this case, so far as my examination shows, has never been changed by the Supreme Court of Alabama. On the contrary, in the last case on this subject to which attention has been called, or which I have been able to find (Railway Co. v. Hill, 146 Ala. 240, 40 South. 612), the same view of the measure of damages is announced, as will be seen by an extract from the opinion, in the following language:

"The gravamen of the eighth count is 'the alleged wrong of the defendant in putting the plaintiff's minor son to work at a dangerous place upon a dangerous work without her consent.' Marbury Lumber Co. v. Westbrook, 121 Ala. 179, 25 South. 914. The count avers that in consequence of such wrong her son was killed, and plaintiff (thereby) lost his services during his

minority, and plaintiff was damaged by reason of said injury. This damage was the deprivation of his service and wages until he attained his majority; the father being dead, and the son not having been emancipated."

But these statutes of Alabama have been construed by this court. In McGehee v. McCarley, 91 Fed. 462–465, 33 C. C. A. 629, in the opinion of the court, this language is used:

"But the majority of this court finds material error in this cause resulting from the failure of the trial court to charge the jury, as the defendants below requested, that only compensatory, and not punitive, damages were recoverable in the case. It is plain to us that under the doctrine of Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, no punitive damages could be recovered in this case. It is not claimed that the corporation ever authorized or ratified the alleged negligence or assault. While the corporation may be compelled to make compensation for the tortious act of its servant committed in the scope of his employment, even if the act be willful and wanton, yet, if the corporation be itself innocent, it cannot be punished by the infliction of vindictive damages. See Circuit Court of Appeals, Seventh Circuit, in Railway Co. v. Russ, 6 C. C. A. 597, 57 Fed. 822. We find nothing in the statute of Alabama which would require a departure from the doctrine announced in Railway Co. v. Prentice, supra. On the contrary, we find that the Supreme Court of Alabama, in construing the very statute under which this action was brought (Code Ala. 1886, § 2588), said that the damages recoverable under that statute are compensatory and not punitive. Williams v. Railroad Co., 91 Ala. 635, 9 South. 77. We are clear that the judgment must be reversed because of the error above stated."

There was a rehearing in this case and the judgment of the court was changed, and instead of being reversed it was affirmed, but upon the ground it seems that the suit was found to have been brought under section 27 of the Code of Alabama of 1896, and not under section 26, as was assumed when it was first decided. To this last decision Judge Pardee filed a dissenting opinion. McGehee v. McCarley, 103 Fed. 55, 44 C. C. A. 252.

The case now before the court, it is conceded, is proceeding under section 26. Judge McCORMICK, however, evidently entertained and acted upon the same view in both decisions in the case of McGehee v. McCarley which he has expressed in this case.

I think the distinction I have drawn, which seems to me to be supported by the statutes and decisions in Alabama, is right, and is founded not only in reason, but in justice. If the parent elects to sue in right of the survivorship of the minor child's cause of action, and brings a suit against which any contributory negligence of the deceased may be set up as a defense (if the child has attained such age as that contributory negligence can be pleaded), then the parent would be entitled to, and ought to recover, if liability is shown, a substantial verdict, how to be measured under the law of Alabama it is unnecessary to say, but certainly going beyond any mere value of minority service. If, however, the parent wishes to avoid any defense which the employer might properly set up against the deceased, and chooses to sue in his or her own right as parent, for the child's death, it seems to me that the recovery in justice should be restricted to the parent's pecuniary loss; that is, the value of the child's services during minority. In my judgment this is not only fair and right, but it is the law of Alabama deducible from its statutes and decisions. Certainly a statute undertaking to give any greater right should do so clearly and distinctly.

I think the decision of the Circuit Court should be reversed, and the case remanded and a new trial had, in which the law of damage could be stated to the jury in accordance with what has been herein said.

## On Petition of Plaintiff in Error for Rehearing.

PER CURIAM. The judges who concurred in the decision of this case are satisfied with the views expressed in the opinion of the court, and see no reason in the petition for rehearing sufficient to induce them to grant the same; and the application therefor is denied.

NOTE.—The following is the charge to the jury:

SHELBY, Circuit Judge (charging the jury orally). At common law in England and in this country no action lies for the death of a human being. The idea was that the injury was merged in the felony, and under that system, although a man could bring a suit in the event he was personally injured and not killed, if it killed him no one at all could sue. But a long time ago an act was passed in England, called "Lord Campbell's Act," which authorized a suit to be brought in the event of death from the wrongful or negligent act of another, and that act has been substantially adopted in all or nearly all the states of the Union, so that the law now is by statute that, wherever death is produced by the wrongful or negligent act of another, an action accrues to some one. We have in Alabama statutes of that kind. We have acts which permit a suit to be brought by the administrator of a person who is negligently or wrongfully killed, and then we have a law, which is section 26 of the present Code of Alabama (Code 1896), which provides that the father, if living, or the mother, if the father is dead, may bring an action for the wrongful or negligent killing of a minor child who is a member of the father's family. It is under that section of the Code that this suit is brought.

The plaintiff alleges that his son, who was a minor, was killed by the wrongful act or the negligent act of the defendant's agents or servants. The wrongful and negligent acts charged are described in the declaration and have been detailed in the evidence. The plaintiff also alleges, as it was necessary for him to allege under the section of the Code under which this action is brought, that his son who was killed was a member of his family. The defendant files a plea of not guilty, which is in effect a denial of all of the wrongs alleged in the complaint. It also pleads specially that the son who was killed was not a member of the plaintiff's family at the time he was killed. Now, the issues joined upon these pleas involve the questions which are submitted to the jury. The burden of proof in the first instance, is upon the plaintiff; that is, the plaintiff must prove in this case the allegations of his complaint. If proved by a preponderance of the evidence and to the satisfaction of the jury, the plaintiff then becomes entitled to a verdict. On the failure of such proof by the plaintiff, the defendant is entitled to a verdict. In this case, as in every case, or in nearly every case, that is litigated and tried, there are many facts which are practically conceded, and but few points that are earnestly contested. Now, there is no controversy here about the proposition that the plaintiff in this case is the father of the young man who was killed. There is no controversy about his employment, and about the fact that he was killed. There is no controversy about the fact that he was killed while in the employment of the defendant. The chief controversy in the case is over the question as to whether or not at the time he was killed he was a member of the plaintiff's family. That he was his son there is no dispute; but the question is submitted to the jury, as a question of fact in this case, whether or not he was a member of the plaintiff's family at the time of the accident. At the beginning of the evidence on this question this young man was residing at the house of his father, and at that time there could be no question about the fact that he would then be a member of the family within the statute. The defendant contends that subsequent occurrences before the killing amounted to an emancipation of the lad, and caused him to cease to be a member of the family of his father. It is argued before

you on that line that the father no longer had any interest in him, did not seek to collect his wages, did not make any inquiry as to where he was, and that there was a long absence not accounted for in any way from the paternal roof. The plaintiff, on the other hand, says that the evidence shows that there was some controversy or dispute between the lad and his parents in reference to his attention to a young woman who lived near by, and that that controversy led to the lad's going temporarily away from home, and his father consented to his absence for fear that his return might lead to a marriage between the boy and the young woman. It is contended on the part of the defendant that the absence was intended, so far as the proof shows, to be permanent, and that the boy was no longer a part of the family, and that the family relations were permanently and forever severed. The plaintiff says that the absence was merely temporary, that it was mere prudence and care on the part of his parents to permit him to stay away without any inquiry for some time, and that the disruption of the family relation was not of the character to cause him to cease to be a member of the family. If there was an abandonment of the relation of parent and child, intended to be permanent, or intended to be absolute for the time, though limited, the jury might be justified in concluding that the lad was not at the time a member of the family; but if the absence was only temporary, and was permitted by the father, and not a case of permanent estrangement, but simply in view of the father's idea as to what effect might be produced by the son's presence near the girl whom he did not wish him to marry, if the absence was only of that kind, and permitted for that reason, the jury, I think, would not be justified in holding that he ceased to be a member of the family. That question is left for the jury to determine, whether in the light of the facts he remained a member of the family. You should look at it in the light of your experience, at every fact from the time of the controversy, about his attentions to the girl until the lad was returned home a corpse. If in your view, in the light of this evidence and the inferences you draw legitimately from it, the lad remained a member of the family, then that defense fails; but if you find from the evidence, or draw the inference, that the family relations were severed, and that under the circumstances he was no longer a member of the family, the defense would be good, because it is incumbent on the plaintiff to show that this lad was a member of the plaintiff's family at the time the accident occurred. You will bring your common knowledge and experience to bear upon questions of that kind, and I submit this one to the jury, believing that they are better able to deal with it than lawyers at the bar or the judge on the bench.

I think that I might say to you that a temporary absence with the intention of returning to the family roof would not prevent the lad from remaining a member of his father's family. I think I might say to you that the father might permit, without dissolving the family relation, an absence of this kind, if he did not intend the permanent estrangement and dislodgement from the home, and the lad yet remain a member of the family. It is a question of intention upon the part of the parent and upon the part of the child, to be deduced from the actions and circumstances that surround the case.

One of the averments in several of the counts of the declaration is that the lad came to his death by the wrongful and negligent act of the defendant. Proof is offered on the part of the plaintiff tending to show that there was a defect in a step which was used in getting on the engine. Proof is offered on the part of the defendant to show that the defect was not of such a character as would be negligence on the part of the defendant. You will remember the conflict upon this subject. I will not go into details, because they would enlarge the charge too much. It is the duty of the employer to provide a safe place for his employé to work, and to keep sound implements of labor, or to exercise, I will say, at least ordinary care in keeping the implements and machinery which his employé is to use in a reasonably safe condition. If the jury find from the evidence that the step which was used to get up or down from the engine was so defective as to make its use dangerous, they would be justified in inferring negligence on the part of the defendant from that defect. This and other averments of negligence and wrong that appear in the complaint must be proved, for the burden of proof is upon the plaintiff, and the jury, in considering each of them, will consider

all the evidence in ascertaining whether or not due proof is made. If you find, under the instructions which I have given you, that proof is made of the averments of the declaration, or of any count of the declaration, to your satisfaction, including the averment that the lad was a member of the father's family, then it would be your duty to find a verdict in favor of the plaintiff, and the question would then arise as to the mode or rule by which you would estimate the damages to which the plaintiff may be entitled.

There are always in cases of this kind two extreme views submitted to the jury by the parties. It is fortunate that neither the plaintiff nor the defendant is allowed to establish the rule of damages, because either is inclined to go to an extreme. Invariably the plaintiff's tendency is to exaggerate the amount, and to claim the utmost sum, and the defendant's tendency is to make it as small as possible. Now, the plaintiff, gentlemen, can claim what he pleases in his declaration. That is no criterion to go by. He might sue for a million dollars as well as one, and whatever he sues for is usually argued for. I think I should say on that question, if you get to it, that you should exercise a calm and deliberate judgment, not be influenced by any appeals to sympathy, remarks about poverty, nor any remarks about the defendant being a corporation. Whatever sympathy we have, we are not justified in exercising it at the improper expense of others. The section of the Code under which the plaintiff has brought this suit says that the plaintiff shall recover "such damages as the jury may assess," and in that sense, by the letter of the statute under which this suit is framed, the assessment of damages is left to the jury; but it is left to the jury under the control of the law, and under the control of the court, and an excessive verdict, produced by appeals to passion, or to prejudice, or to sympathy, would of necessity have to be set aside or reduced by the court. I do not say to you, in this case, that the amount of damages should be limited to the amount of wages or earnings that this lad might have made from the time of the accident to the time he reached his majority. I do not say to you that there is such a limit. The plaintiff can recover "such damages as the jury may assess," and you should have regard to all the facts and circumstances of the case which have been so well discussed by counsel, not being influenced by any appeal to passion, sympathy, or feeling. We sit here to decide the case, all of us, according to the proper rules of justice between the parties. If, under the instructions I have given you, you conclude the plaintiff is entitled to recover the form of your verdict will be: "We, the jury, find for the plaintiff, and assess his damages at $———," filling up the blank.

If you come to the conclusion that the plaintiff is not entitled to a verdict, but the defendant is, then the form of your verdict would be: "We, the jury, find for the defendant."

That is all, I believe, that I desire to say to you.

The following is section 26, Code Ala. 1896, being section 2485, Civ. Code Ala. 1907, with the note of Code Commissioner Mayfield appended thereto:

"2485. (26) (2588) (2899). Suits for Injuries Causing Death of Minor Child.— When the death of a minor child is caused by the wrongful act, or omission, or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in cases mentioned in the preceding section; or if the father and mother are both dead, or if they decline to bring the action or fail to do so within six months from the death of the minor, the personal representative of such minor may sue, and in any case shall recover such damages as the jury may assess; but a suit by any one of them for the wrongful death of the minor shall be a bar to another action, either under this section or under the succeeding section."

"Note.—Genesis of Statute. This section first appeared as act approved February 28, 1872 (Acts 1871–72, p. 82), which was codified in the Code of 1876, and appears as section 2899, and a similar statute was enacted January 23, 1885 (Acts 1884–85, p. 99). The act as originally passed was never construed by the Supreme Court. It was very greatly modified, when codified as it appeared in section 2588 of the Code of 1886, and was brought forward as section 26 of the Code of 1896. It was evidently the intention of the Legislature to give the parents, the father and mother, respectively, in the

cases mentioned, a right of action for the wrongful death of their infant in the same manner as the right of action was conferred upon the personal representative under the homicide act, section 27 of the Code of 1896, but to make the action by the parent a bar to an action under the homicide act, so as not to allow an action by both the parent and personal representative for the same wrongful act causing death of infant. There was evidently some confusion or lack of clearness as to the relation of this section to the one following. An action by the parent for the wrongful death of the infant would certainly be a bar to an action by the personal representative under section 26. Would it also be a bar to an action by the personal representative under section 27, or was the effect of the statute of January 23, 1885, or the act as codified (section 26 of the Code of 1896), to take away the right of action under section 27 of the Code of 1896 for the wrongful death of infant? There was also some confusion in the decisions of the court construing these two sections. Each statute provides that the damages recoverable shall be such 'as the jury may assess.' The cases, construing section 27 hold that the damages are punitive, while the case of Williams v. S. & N. R. R. Co., 91 Ala. 635, 9 South. 77, construes section 26, holding that the damages are compensatory and not punitive. This would imply that each statute created a different cause of action, and therefore that two actions might be maintained for the same wrongful death—one under section 26, by the parent or personal representative, and the other under section 27, by the personal representative. There is further confusion for this reason: That section 27 provides that the damages, when recovered, are not subject to the payment of debts of the testator or intestate, but must be distributed according to the statute of distribution, whereas section 26 has no similar provision. In fact, it has no provision as to the status or disposition of the damages when recovered; that is to say, if an action should be brought by the personal representative under section 26, would the damages be distributed between the distributees of the decedent's estate, or would they be for the benefit of the parent exclusively? Another cause for confusion in the statute itself is that it provides that an action by the parent is a bar to a suit by the personal representative, but it does not provide that a suit by the personal representative is a bar to one by the parent; e. g., if the personal representative should bring an action under section 26 of the Code, and recover judgment, would it bar an action by the parent under section 27? The section as now written was intended to make its meaning certain, and not to change it. Amendment of complaint changing cause of action from section 25 or section 26 to section 27. 141 Ala. 325, 37 South. 431. Damages under section 27 held punitive, while those under section 26 held compensatory. Damages under this section should be the same; the language of each as to damages being the same. In action by parent, contributory negligence of the parent may be defense as to simple negligence. A. G. S. R. R. Co. v. Burgess, 116 Ala. 509, 22 South. 913. Damages recoverable under this section held to be pecuniary compensation to parent. Id. Policy of statute. Williams v. S. & N. R. Co., 91 Ala. 635, 9 South. 77; Winslow v. State, 92 Ala. 78, 9 South. 728. Recovery solely for benefit of parents. Tenn. C. I. & R. Co. v. Herndon, 100 Ala. 451, 14 South. 287. Parent can only recover where minor could have recovered at common law, had he survived. Lovell v. De Bardelaben C. & I. Co., 90 Ala. 13, 7 South. 756; Williams v. S. & N. R. Co., 91 Ala. 635, 9 South. 77; Harris v. McNamara, 97 Ala. 181, 12 South. 103. Contributory negligence—effort to avoid injury—when questions for jury. A. G. S. R. Co. v. Dobbs, 101 Ala. 219, 12 South. 770; Williams v. S. & N. R. Co., 91 Ala. 635, 9 South. 77. (See, also, citations to next section.) Damages under this section compensatory and not punitive. Williams v. S. & N. R. Co., 91 Ala. 635, 9 South. 77. (This decision, if not dictum, is wrong and should be corrected.) See Mayfield's Digest, vol. 2, pp. 1029, 1044; vol. 3, p. 978; vol. 5, p. 504."